## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

John Doe,

               Plaintiff,

v.

St. Olaf College,

               Defendant.

| |
|---|
| **Case No.:** 18-cv-02689 (MJD/SER) |
| **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

---

### INTRODUCTION

Plaintiff files this memorandum of law in response to Defendant's motion seeking to dismiss all claims. Plaintiff's Complaint and supporting documents have pleaded and alleged a sufficient factual basis for all claims that should withstand this motion to dismiss. Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss and allow this matter to move forward so that Plaintiff is able to conduct discovery to obtain additional information that proves his claims.

### STATEMENT OF FACTS

The relevant facts and attached documents set forth in Plaintiff's Complaint are incorporated here by reference. Those allegations must be accepted as true for the purposes of this motion to dismiss. *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013). Plaintiff stands behind the recitation of facts made in the documents provided with his Complaint and will not repeat all those facts here.

<u>**ARGUMENT**</u>

## I.   STANDARD OF REVIEW

In a motion to dismiss in a civil proceeding, the factual allegations made in the complaint must be accepted as true and all reasonable inferences must be made in favor of the non-moving party. *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013). The allegations in the complaint must contain sufficient factual information to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Under the pleading standards applied in the federal court system, a Plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). This standard of pleading cannot be met merely by making conclusory allegations. *Id*. at 557. The Supreme Court later stated that a claim is plausible to withstand a motion to dismiss "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

## II.   PLAINTIFF'S TITLE IX CLAIMS SHOULD NOT BE DISMISSED

### A.   <u>The statutory framework of Plaintiff's Title IX claims.</u>

Title IX is one of the two main Acts of Congress that address the issue of sexual assault on university campuses. Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681-1688 applies to all public and private educational institutions that receive federal funds, including colleges and universities. The statute prohibits discrimination on the basis of sex in a school's "education program or activity," which includes all of the school's operations. 20 U.S.C. § 1681(a), 1687. A school specifically agrees, as a

condition for receiving federal funds, to operate all of its programs and activities in compliance with Title IX and the Department of Education's Title IX regulations. 34 C.F.R. § 106.4(a)-(c). During the 2017-2018 academic year, when Plaintiff was enrolled at St. Olaf College, Defendant accepted funds from the United States Department of Education. Complaint ¶ 9, 16).

Sexual harassment is a form of sex discrimination prohibited by Title IX and is broadly defined as unwelcome conduct of a sexual nature that includes sexual assault and rape. Student-on-student sexual harassment is prohibited by Title IX, as are other forms of sexual harassment. See U.S. Dept. of Education, Office for Civil Rights, Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties – Title IX (2001) at 2-3 & nn. 2, 3, 6, 8, 20 (notice of publication at 66 Fed. Reg. 5512 (January 19, 2001)) ("2001 Guidance"), available at http://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf.

Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student … complaints alleging any action which would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8 (Dept of Education); 28 C.F.R. § 54.135(b) (Dept. of Justice). Such prohibited actions comprise all forms of sexual harassment including sexual assault and rape. 2001 Guidance at 19-20, 21, & nn. 98-101. The procedures adopted by a school subject to Title IX must not only "ensure the Title IX rights of the complainant," but must also "accord[] due process to both parties involved …" 2001 Guidance at 22. The "prompt and equitable" procedures, at a minimum, require the

school to: (1) "ensure the Title IX rights of the complainant," but "accord due process to both parties involved,"; (2) provide an "adequate, reliable, and impartial investigation"; (3) if the complainant is given a pre-hearing opportunity "to present his or her side of the story," the accused student must be given the same opportunity; (4) provide the complainant and the accused student "an equal opportunity to present relevant witnesses and other evidence"; (5) ensure that forensic evidence is reviewed by a trained forensic examiner; and (6) ensure that the "factfinder and decision maker . . . have adequate training or knowledge regarding sexual violence."  2001 Guidance at 20.

In September 2017, in response to concerns that prior guidelines had created a system that had gone too far and was treating the accused unfairly, the Office for Civil Rights (OCR) issued a "significant guidance document" entitled "Q&A on Campus Sexual Misconduct." That 2017 Q&A rescinded the Dear Colleague Letter of 2011 and the Questions and Answers on Title IX Sexual Violence dated April 29, 2014, noting that the withdrawn documents "ignored notice and comment requirements, created a system that lacked basic elements of due process and failed to ensure fundamental fairness.[1]" The 2017 Q&A, while reaffirming the vitality of the 2001 and 2006 Guidance Documents, made notable changes from the guidance provided in the Dear Colleague Letter and the 2014 Q&A Guidance, including:

a. Removing the requirement that findings of fact and conclusions must be reached by applying a preponderance of the evidence standard and allowing

[1] https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf

institutions to decide whether to apply the more likely than not preponderance standard or the highly probable clear and convincing evidence standard[2];

b. Making it clear that the burden is on the institution, and not on either party, to gather sufficient evidence to reach a fair and impartial determination as to whether sexual misconduct has occurred[3]; and

c. Removing the 60-day deadline for adjudication of claims in favor of a prompt resolution of claims that afforded both parties fairness.

There are four standards available under Title IX to an accused student challenging the result of a campus sexual assault proceeding: (1) "erroneous outcome"; (2) "selective enforcement"; (3) "deliberate indifference"; and (4) "archaic assumptions." *Bleiler v. College of the Holy Cross*, 2013 WL 4714340, at *5 (D. Mass. 2013) (citing *Yusuf v. Vassar College*, 35 F.3d 709, 715-16 (2nd Cir. 1994) and *Mallory v. Ohio Univ.*, 76 F. App'x 634, 638-39 (6th Cir. 2003)). *See also Doe v. University of the South*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009) (applying all four standards). In the present case, Plaintiff has made claims of erroneous outcome against Defendant as a result of the sham sexual assault trial Defendant conducted against him, in which nothing even resembling due process was provided, and has requested declarative relief holding, in part, that Defendant's student disciplinary process, as written and applied, violated Title IX.

## B. Title IX creates a private action for declaratory judgment.

Defendant asserts that Plaintiff's claim for declaratory relief fails as a matter of law because Title IX does not give rise to a private cause of action unless there are

---

[2] Id. at Question 8
[3] Id. at question 6

allegations that the policies are intentionally discriminatory.  (Defendant's Memorandum of Law in Support of Motion to Dismiss P. 13-15, Doc. No. 46).  In support of its assertion, Defendant relies primarily on the case of *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (Defendant's Memorandum of Law in Support of Motion to Dismiss P. 13-15). Defendant's position attributes meaning to the Supreme Court decision in *Gebser* that the case does not have.

> ### *i. If there is an implied right of private action, Plaintiff can seek declaratory relief.*

The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  District courts routinely employ declaratory judgments to interpret and construe federal statutes and regulations like Title IX.  See generally 10B Wright, Miller & Kane, Federal Practice and Procedure, § 2763 (3d ed. 1998), at 613-20.

> ### *ii. Title IX contains an implied right of private action under the facts of this case.*

It has been long established that Title IX carries with it an implied right of private action.  The Unites States Supreme Court has explicitly stated that a student discriminated against on the basis of sex may enforce his or her Title IX rights through an implied right of private action.  *See Cannon v. University of Chicago*, 441 U.S. 677, 688-89 (1979).  Since the decision in *Cannon v. University of Chicago*, the Supreme Court has repeatedly recognized an implied right of action under Title IX and has expanded

upon it.  See *Franklin v. Gwinnett County Pub. Schools*, 503 U.S. 60, 63-64 (1992)

(Monetary damages available in a right of private action where a high school student was

sexually harassed and assaulted by a teacher and the plaintiff claimed the administration

knew of the teacher's conduct but did not stop it); *Gebser*, 524 U.S. at 283, 285, 290-91

(Court held that damages recovery under Title IX's private right of action required a

showing that school district officials had actual notice of the sexual harassment of a

student by a teacher, but took no action); *Davis v. Monroe County Bd. Of Educ.*, 526 U.S.

629, 642-43 (1999) (Title IX's implied right of private action existed with sexual

harassment of one student by another student where the school had notice and showed

deliberate indifference); *Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167, 182-82

(2005) (Plaintiff claiming retaliation for complaints of sex discrimination could bring

private action for damages under Title IX).

This progression of decisions evidences a pattern of case by case determination of

whether the specific facts in an action warrant a private action for relief under Title IX.  It

does not appear, however, that the Supreme Court has ever addressed the Title IX issues

presented in this case; whether a student wrongfully accused of sexual assault may bring

a private right of action for damages, or for declaratory judgment, against his school for

reaching an erroneous outcome resulting from an intentional violation of its Title IX

obligation to assure prompt and equitable resolution of the charges.

### iii. The Gebser decision does not stand for the proposition there can be no private cause of action in this case.

While citing *Gebser*, Defendant asserts the Supreme Court has actually held there

is no private cause of action for an institution's failure to comply with regulations

requiring prompt and equitable procedures for sexual assault.  (Defendant's

Memorandum of Law P. 13-14 citing to *Gebser* at 292).  *Gebser* does not stand for this

proposition.

    *Gebser* was a case in which the Supreme Court rejected a Title IX lawsuit for

damages where the Plaintiff could not show the school's actual notice to establish

liability, but instead attempted to rely on theories of respondeat superior and constructive

notice.  524 U.S. at 283, 285.  In an attempt to show the school district was on notice of

the teacher's actions toward the student or avoid that requirement, the plaintiff claimed

that the school had failed to promulgate procedures required by Title IX and that this

failure to establish the required rules should satisfy both the notice and deliberate

indifference requirements.  524 U.S. at 291-92.  The Court rejected these arguments,

holding that actual notice of the teacher's actions by the school district was required and

that failure to establish Title IX programs and policies, on its own, did not show

deliberate indifference.  524 U.S. at 524.  The Court then made the following statement:

> And in any event, the failure to promulgate a grievance procedure does not
> itself constitute "discrimination" under Title IX. Of course, the Department
> of Education could enforce the requirement administratively: Agencies
> generally have authority to promulgate and enforce requirements that
> effectuate the statute's non-discrimination mandate, 20 U.S.C. §1682, even
> if those requirements do not purport to represent a definition of
> discrimination under the statute. *E.g., Grove City,* 465 U.S., at 574-575,
> 104 S.Ct., at 1221-1222 (permitting administrative enforcement of
> regulation requiring college to execute an "Assurance of Compliance" with
> Title IX). We have never held, however, that the implied private right of
> action under Title IX allows recovery in damages for violation of those
> sorts of administrative requirements.

524 U.S. at 292.  That last sentence of the above quote is true, but it is equally true that

the Supreme Court has never been presented with the issue raised in this case.  This case

involves a Title IX lawsuit brought against a school by the accused in a sexual assault proceeding. Plaintiff is not alleging that Defendant failed to enact the required rules and procedures. In marked contrast, he is alleging that the rules and procedures Defendant enacted and applied to him were illegal and discriminatory with long-lasting effects on the Plaintiff.

In addition, Defendant's interpretation is in opposition to the usual manner the Supreme Court has typically used to determine the existence of a private right of action for a particular claim. "Title IX is a broadly written general prohibition on discrimination, followed by specific narrow exceptions to that broad prohibition." *Jackson*, 544 U.S. at 175. "Because Congress did not list any specific discrimination practices when it wrote Title IX, its failure to mention one such practice does not tell us anything about whether it intended that practice to be covered." *Id*. Instead, the Supreme Court has identified, one case at a time, victims of intentional conduct who have a private right of action under Title IX. The factual circumstances of a case such as this were not before the Supreme Court in *Gebser*. It is therefore inaccurate to state absolutely that the decision in *Gebser* prevents a claim in this case.

Further, while Count I seeks a declaratory judgment, it does not stand alone and must be taken together with Count II which makes specific allegations regarding the manner in which Plaintiff was discriminated against in the proceedings and procedures Defendant instituted against him. That this is the case is evidenced in Plaintiff's request for relief where he asks that the Court:

> issue a judgment that (a) declares the Defendant's student disciplinary process, including the Policy Prohibiting Discrimination, Harassment and Related Misconduct, as written, as implemented, and as applied to Plaintiff,

to be in violation of Title IX, including its due process requirements; (b) requires Defendant to expunge the entire disciplinary proceeding from its records; (c) declares Defendant's conduct to be wrongful, willful, intentional, and reckless; (d) prohibits Defendant from referencing Plaintiff's disciplinary proceeding in the event of any third-party inquiry; and (e) declares that upon any third-party inquiry, Plaintiff may reply in the negative as to any question as to whether he has been accused of sexual misconduct or as to any similar question.

(Complaint Wherefore Clause § 1).

The requirements of Title IX referenced in Plaintiff's allegations are set forth in the regulations promulgated by the Department of Education and the Department of Justice in accordance with Title IX's enabling legislation. The actions covered by the regulations cover all forms of sexual harassment, including sexual assault and rape. A school's procedures must provide due process to both parties involved. Here, Plaintiff has alleged he was denied these rights and that it occurred in this manner because the system, from the federal government down to the Defendant itself, is set up to reach the conclusion that the alleged male perpetrator (accused Plaintiff in this case) committed the actions alleged. That is sufficient to allow Plaintiff to pursue his claim for declaratory judgment.

### C. Plaintiff's has alleged sufficient facts to support his Title IX claims in Count II.

Defendant next asserts that Plaintiff's Title IX claims made in Count II must fail because, even if Plaintiff could prove there was an erroneous outcome, he fails to allege facts supporting a conclusion that sex discrimination was a motivating factor in the erroneous finding. (Defendant's Memorandum of Law P. 14-22). To the contrary, Plaintiff's Complaint is replete with allegations and examples of how the erroneous outcome in this case was the result of sex discrimination.

10

In order to carry an erroneous outcome claim, Plaintiff must plead two (2) elements, (1) facts sufficient to cast doubt as to the accuracy of the outcome of the proceeding and (2) causation by gender. *Yusuf v. Vassar College*, 35 F.3d 709, 715-16 (2d Cir. 1994). Allegations of a flawed proceeding without particular circumstances suggesting sex discrimination as a motivating factor are not enough. *Yusuf*, 35 F.3d. at 715. Some evidence that might support a discrimination claim include "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender" or "statements reflecting bias by members of the tribunal." *Id*. Statements reflecting bias by members of the tribunal can both cast doubt on the accuracy of the proceeding and relate the error to gender bias. *Id*.

Proof of erroneous outcome can be shown from flaws in the case, such as omissions in what was included in witness summaries. *See John Doe v. Washington and Lee University*, Case No. 6:14-cv-00052, P. 16 (W.D. VA. Aug. 5, 2015). An erroneous outcome can also be sufficiently alleged where the plaintiff alleges the school denied him the opportunity to cross-examine his accuser where the outcome rests on a credibility determination. *John Doe v. University of Michigan*, No. 17-2213, page 12-13 (6th Cir. Opinion filed September 7, 2018) ("First, because Doe alleged that the university did not provide an opportunity for cross-examination even though credibility was at stake in his case, he has pled facts sufficient to cast some articulable doubt on the accuracy of the disciplinary proceeding's outcome.").

In the present case, Plaintiff has identified numerous facts in his Complaint which call into question the accuracy of the outcome of the proceedings.

*i. Plaintiff has alleged sufficient facts to call the outcome of the proceedings against him into question.*

Those facts include inconsistencies and omissions in Jane Doe's version of events that severely calls into question her credibility regarding the incident, including but not limited to:

- The absence of any evidence Jane Doe objected to the sexual contact.

- Failure to fully interview all witnesses, ask appropriate relevant questions, view all communications (via text, social media, snapchat) by Jane Doe.

- Potential bias and interest in finding the Plaintiff responsible to show compliance with Title IX.

- No opportunity to have an attorney represent the Plaintiff.

- No opportunity to question Jane Doe regarding the allegation of sexual assault.

- No opportunity to view all the evidence, particularly exculpatory evidence.

- Unnecessary haste in reaching a conclusion despite the federal government removing the 60-day timeline for completing investigations.

- Failure of investigation to take into consideration Jane Doe's state of mind in making the allegations and whether they were instigated by her regret and/or friends' retaliatory urging to report, and whether she was biased against Plaintiff because of his race.

- No access to forensic evidence.

(Complaint ¶ 134).

Plaintiff also identified numerous procedural flaws in the process that affected the proof against him that impacted the erroneous result, which included, but are not limited to:

- The lack of an appropriate investigation by a properly trained and unbiased investigator.

- The refusal to provide Plaintiff with a hearing wherein he could contest the allegations against him.

- The prohibition on Plaintiff being allowed to conduct his own investigation or contact any potential witness.

- The presumption of guilt applied to Plaintiff from the outset.

- The impermissible shifting of the burden of proof to Plaintiff.

(Complaint ¶ 135). Further, prior to the proceedings, Plaintiff's request for an informal resolution of Jane Doe allegation was summarily refused by the Defendant. Plaintiff contends that these facts and many others alleged in his Complaint, which show the lack of anything resembling basic fairness in this life altering proceeding, are sufficient to raise a question of fact regarding the fairness of the outcome of the proceedings against him.

>           *ii. Plaintiff has alleged sufficient connections between the outcome of the proceedings against him and gender bias to survive this motion to dismiss.*

Defendant also contends that even if Plaintiff could cast doubt on the outcome of the proceedings against him, he has failed to allege and cannot even allege, any proof that the erroneous outcome was motivated at least in part by gender bias or discrimination.

This assertion, ignores that allegations in Paragraph 14 of Plaintiff's complaint, which state:

> In 2015, in a highly publicized case, Defendant found the alleged perpetrator of a sexual assault of Madeline Wilson not responsible for such assault.  Ms. Wilson objected and she did so in a public setting, drawing the attention of local media, including and not limited airing of her grievances on statewide television and articles in the Minneapolis Star Tribune newspaper.  As a result of negative publicity, Defendant is overcompensating now, in order to avoid bad publicity.
>
> http://www.startribune.com/st-olaf-student-protests-sexual-misconduct-policy-with-a-t-shirt/374837711/
>
> https://mycollegeisprotectingrapists.wordpress.com/about/

(Complaint ¶ 14).

Recent decisions, including the *Doe v. University of Michigan* Court have concluded that an allegation of a specific incident which plausibly suggests an outcome reached on the basis of sex is sufficient to withstand a motion to dismiss.  See *John Doe v. University of Michigan*, No. 17-2213, page 13 (6th Cir. Opinion filed September 7, 2018) ("Second, Doe has pointed to circumstances surrounding his disciplinary proceedings that, accepting all of his factual allegations as true and drawing all reasonable inferences in his favor, plausibly suggest the university acted with bias based on his sex. See *Iqbal*, 556 U.S. at 681-82.").

Here, Plaintiff has pleaded similar facts which should be enough to allow his claim to survive a motion to dismiss.  First, the allegations related to Paragraph 14 do plausibly allow for a conclusion that Defendant would err on the side of finding a male student

responsible for sexual misconduct to avoid another highly publicized case like that mentioned in Paragraph 14.

Plaintiff has also alleged in great detail, as explained in Complaint Exhibit 2, how Jane Doe's version of events was accepted over his version of events in a nearly unconditional manner.  These factual allegations contained in Plaintiff's Complaint are sufficient to support a plausible connection between gender discrimination and the outcome of his case, which is all that is necessary in order to survive this motion to dismiss.

The allegations made in this case are similar to those in other recent cases in which a motion to dismiss a Title IX claim was also denied.

In a similar case, the district court in *Wells v. Xavier Univ.*, 7 F.Supp.3d 746, (S.D. Ohio, 2014), held that Title IX erroneous outcome and deliberate indifference claims plead sufficient facts to survive a motion to dismiss where Plaintiff alleged that defendant rushed to judgment, failed to train investigators, ignored a prosecutor who expressed doubts to university about the case, denied Plaintiff counsel, and denied Plaintiff witnesses in conjunction with prior OCR investigations of the university as evidence sufficient to survive a motion to dismiss.  *Wells v. Xavier Univ.*, 7 F.Supp.3d 746, 751, 747 (S.D. Ohio, 2014).  In *Doe v. Salisbury Univ.*, Civil No. JKB-15-517, 2015 U.S. Dist. Lexis 110772 (D. Md. Aug. 21, 2015), that Court held that pleadings alleging upon information and belief that the defendant held evidence which would show the school sought to demonstrate to the Department of Education it was aggressively disciplining male students was sufficient to move past a motion to dismiss.  *Id.* at P. 23-24.

In the present case, Plaintiff has alleged that the proceeding against him lacked basic fairness, provided a specific and very real example of Defendant facing massive scrutiny and potential negative publicity for concluding a male student was not responsible for sexual misconduct, and alleged that at nearly every instance where credibility was at issue, Jane Doe's version of events was accepted over Plaintiff's.

These allegations are sufficient to create, at the very least, a plausible connection between gender discrimination or bias and the erroneous outcome of Plaintiff's case. That is all that is necessary for Plaintiff's claims to survive this motion to dismiss.

## III.    PLAINTIFF'S NEGLIGENCE CLAIM SHOULD NOT BE DISMISSED

Defendant asserts that Plaintiff's negligence claim must fail because, even having undertaken to implement and apply a disciplinary procedure that had the potential to find Plaintiff guilty of sexual assault or rape and result in life altering consequence, it owed Plaintiff no duty of care.  (Defendant's Memorandum of Law P. 22).  In making this argument, Defendant ignores Minnesota case law, which explicitly establishes a duty of care while arguing no duty exists. Despite extensive citations concerning the case in other areas, Defendant fails to mention the recent decision out of this Court denying a motion to dismiss on a similar claim. *Doe v. University of St. Thomas*, 240 F. Supp. 3d 984, 994-95 (D. Minn. 2017) (Tunheim, J.) (denying motion to dismiss negligence claim brought by student suspended for alleged sexual misconduct).  In that case, St. Thomas' motion for summary judgment was heard on November 13, 2018.  At such hearing, the Plaintiff implored the Court to adopt a standard of care that is consistent with the developments of the Legislative Branch and those of decisions of Federal District Courts and Federal

Courts of Appeal throughout the country.  That standard of care was articulated as follows:

> Having implemented a set of policies and procedures relative to sexual misconduct investigations on campus, an educational institution has a **duty** to administer such policies and procedures in a way that is <u>fair</u> and <u>impartial</u> to both the accused and the accuser.

### *i. Defendant, at a minimum, has a duty to not arbitrarily dismiss students.*

Under Minnesota law, a private university does have a duty, paralleling those imposed on public universities by due process, not to arbitrarily dismiss students. *Abbariao v. Hamline University School of Law*, 258 N.W.2d 108, 112-13, (Minn. 1977); *Rollins v. Cardinal Stritch Univ.*, 626 N.W.2d 464 (Minn. App. 2001).  This case law establishing that a private university owes its students this common law duty clearly indicates that the common law principles of negligence apply in a case such as this.

While Defendant's decision to undertake a disciplinary process establishes the basis for the existence of Defendant's duty in this matter, the content of Defendant's Policy and the requirements of Title IX are instructive in determining the scope of Defendant's duty to Plaintiff.  *See ServiceMaster of St. Cloud v. GAB Business Services, Inc.*, 544 N.W.2d 302, 307 (Minn. 1996) (stating that in determining if a duty exists and what it is, court will look to contractual relationships, applicable statutes, the common law, and the conduct of the parties).

At the very least, when Defendant undertook to involve itself in the business of conducting investigations and determining whether its students were guilty of sexual assault, or not, it had an obligation to create a process that was fair and equitable. Even though such process is not the same as that which a criminal defendant would receive,

Defendant is obligated to provide some, if not equal, measure of due process in the proceeding to ensure that a fair outcome was achieved, in consideration of the damage and injustice inflicted from an erroneous one.

The case of *Doe v. Brandies Univ.*, 2016 WL 1274533 (D.Mass. 2016), is particularly instructive on how to view the nature of this duty. While recognizing that Brandeis had an interest in protecting its students and that it did not owe due process to a respondent like the due process that would be owed if the respondent was facing incarceration, that Court stated:

> Nonetheless, Brandeis's authority to discipline its students is not entirely without limits. Although the relationship between the university and its students is essentially contractual, the university's disciplinary actions may also be reviewed by the courts to determine whether it provided "basic fairness" to the student. While that concept is not well-defined, and no doubt varies with the magnitude of the interests at stake, it is nonetheless clear that the university must provide its students with some minimum level of fair play.

*Doe v. Brandeis Univ.*, 2016 WL 1274533, p. 10-11 (D.Mass. 2016). In further discussing Brandeis' obligations after it decided to get involved in determining if its students were rapists, that Court went on to state:

> Whether someone is a "victim" is a conclusion to be reached at the end of a fair process, not an assumption to be made at the beginning. Each case must be decided on its own merits, according to its own facts. If a college student is to be marked for life as a sexual predator, it is reasonable to require that he be provided a fair opportunity to defend himself and an impartial arbiter to make that decision.

*Doe v. Brandeis Univ.*, 2016 WL 1274533, p. 12 (D.Mass. 2016).

In summarizing its conclusion that Brandeis did not have an unfettered ability to discipline students when there was so much on the line for the students, the Court stated: "Put simply, a fair determination of the facts requires a fair process, not tilted to favor a

particular outcome, and a fair and neutral fact-finder, not predisposed to reach a particular outcome." *Id*.

Similarly, the Court in *Doe v. University of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009), denied the defendant's motion to dismiss the student plaintiff's negligence claim, analyzing the negligence claim under Tennessee state law. *Doe v. University of the South*, 687 F. Supp. 2d 744, P. 34-35 (E.D. Tenn. 2009). In denying the motion to dismiss that Court stated "… in this case a jury could find that the harm caused by the University's allegedly and arguably haphazard implementation of its own Sexual Assault Policies was foreseeable, especially where here, as there, the harm was severe: a wrongful conviction by a disciplinary committee." *Id*. at P. 35.

The Courts in both *Doe v. Brandeis* and *Doe v. University of the South* recognized that when a university undertakes to provide a disciplinary process wherein it will adjudicate a student's guilt or innocence on a claim of sexual assault, the university has an obligation to use reasonable care in creating and implementing the process to avoid causing the foreseeable harm that will result to a student's life from a wrongful sexual assault conviction. This view is consistent with the law in the State of Minnesota which imposes a duty to not act arbitrarily in disciplining students. In a case such as this, Defendant had, at a minimum, a duty not to arbitrarily impose serious and highly consequential discipline on students in an arbitrary manner.

### ii. Defendant's own policies are instructive on its duty of care.

The Policy and the requirements of Title IX are instructive in determining the scope of Defendant's duty to Plaintiff. *See ServiceMaster of St. Cloud v. GAB Business Services, Inc.*, 544 N.W.2d 302, 307 (Minn. 1996) (stating that in determining if a duty

exists and what it is, court will look to contractual relationships, applicable statutes, the common law, and the conduct of the parties).

In the present case, the most instructive sources of the scope of Defendant's duty come from the Policy it created and from the statutes and directives set forth by the Federal Government in Title IX and the administrative rules governing compliance with Title IX. Among the important provisions of Title IX regulations, as identified by the Office for Civil Rights in 2001, are that schools must provide due process to both parties involved in a sexual misconduct proceeding, which includes, at a minimum:

- "Notice . . . of the procedure, including where complaints may be filed";

- "Application of the procedure to complaints alleging [sexual] harassment . . .";

- "Adequate, reliable, **and impartial investigation of** complaints, including the opportunity to present witnesses and other evidence";

- "Designated and reasonably prompt timeframes for the major stages of the complaint process";

- and "Notice to the parties of the outcome of the complaint . . ."

(Complaint ¶ 23); 2001 Guidance at 20 (emphasis added). More recently, the Office for Civil Rights has stated that Title IX requires the following:

- A school's "Title IX coordinator [the official charged with compliance] should review the [school's] disciplinary procedures to ensure that the procedures comply with the prompt and equitable requirements of Title IX."

- "Although a school may need to delay temporarily the fact-finding portion of a Title IX investigation while the police are gathering evidence, once notified that

the police department has completed its gathering of evidence . . . , the school

must promptly resume and complete its fact-finding for the Title IX investigation."

- The complainant and the accused student "must have an equal opportunity to
present relevant witnesses and other evidence."

- The complainant and the accused student "must be afforded similar and timely
access to any information that will be used at the hearing.  For example, a school
should not conduct a pre-hearing meeting during which only the [complainant] is
present and given an opportunity to present his or her side of the story, unless a
similar meeting takes place with the [accused student]."

- "Schools must maintain documentation of all proceedings, which may include
written findings of fact, transcripts, or audio recordings."

- "[S]chools [should] provide an appeals process."

- "In sexual violence cases, the fact-finder and decision-maker also should have
adequate training or knowledge regarding sexual violence."

- "If an investigation or hearing involves forensic evidence, that evidence should be
reviewed by a trained forensic examiner."

(Complaint ¶ 25); Dear Colleague" Letter from Russlynn Ali, Assistant Secretary for

Civil Rights, U.S. Department of Education (Apr. 4, 2011), available at

http://www2.ed.gov/about/offices/list/ocr/letters/colleagues-201104.pdf.  While the Dear

Colleague letter and the 2014 Q&A have been withdrawn and are no longer controlling, it

is worth nothing that they were withdrawn because the documents "ignored notice and

comment requirements, created a system that lacked basic elements of due process and

failed to ensure fundamental fairness.[4]"  This means that an institution undertaking such an investigation after September 2017 had to provide the accused with more protections, not less.

Among the provisions contained in Defendant's Policy, with allegedly show its "Commitment to fair treatment of all parties" were the following:

- The responsibility to provide truthful information in connection with the investigation and adjudication under the Formal Resolution Process;

- The opportunity to articulate concerns or issues about proceedings under these Resolution Processes with the *Title IX Case Manager*;

- Timely notice of any meeting or proceeding relating to the Formal Resolution Process at which the reporting party or responding party will be in attendance, including any meetings with the investigator, the adjudication panel or other College officials;

- The opportunity to select an advisor of choice, including the right to have that advisor attend any meeting or proceeding at which the party's presence is contemplated by these Resolution Processes;

- Written notice of the general nature of the alleged *Prohibited Conduct*;

- The opportunity to challenge the investigator or any member of the adjudication panel for bias or conflict of interest;

- The opportunity to offer information, present evidence, and identify witnesses during an investigation;

---

[4] https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf

- The opportunity to be heard, orally and/or in writing, as to the determination of a violation of this Policy and the imposition of any sanction(s);

- Timely and equal access to any information that will be used during proceedings and related meetings;

- Reasonable time to prepare any response contemplated by these Resolution Processes;

- Written notice of any extension of timeframes for good cause; and

- Written notice of the determination of any proceedings, including the determination of whether Prohibited Conduct is believed to have occurred, and if so, the imposition of any sanction(s), and the rationale for each.

(Complaint ¶ 39). Given that Federal law mandates and Defendant's own policies' claim that it will provide the above minimal protections and rights, it is reasonable to hold that Defendant's standard of care would apply when it undertook to try Plaintiff for sexual misconduct and require that it, at a minimum, provide those procedures and rights.

Because it is clear Defendant owed Plaintiff a duty of care under Minnesota common law, and because Plaintiff has alleged facts showing the haphazard and biased manner in which the proceedings against him occurred, Defendant's motion to dismiss must be denied.

### iii. Recent judicial decisions evidence a trend toward recognition of a school's duty to provide at least some measure of due process.

Recent judicial decisions in cases with claims similar to those contained in this case evidence a trend toward courts allowing such claims to survive a motion to dismiss and, at the very least, proceed to discovery, where a Plaintiff has an opportunity to prove

the veracity of his claims.  See e.g.: *Doe v. Case Western Reserve Univ*, No. 1:17, paged
22-26 (N.D. Ohio Sept. 1, 2017) (Plaintiff argued that school owed him a duty of care
with the obligations delineated by school policies and federal Title IX directives.  Court
dismissed claims based on policies, but allowed claims based on Title IX directives to
proceed); *Cavalier v. Catholic University of America*, 306 F.Supp. 9, 39-40 (D. D.C
2018) (In this case, Cavalier brought Title IX and Negligence claims against school
related to disciplinary proceedings and a no contact order allegedly put in place after she
reported a sexual assault.  In refusing to dismiss Cavalier's negligence claim the Court
held that while there was typically no special relationship creating a duty for the school to
protect Cavalier, when the school told Cavalier there was a no contact order in place, it
undertook the responsibility to protect Cavalier from future harassment, and because the
possibility of harm was present from the school failing to follow through, Cavalier had
pleaded a plausible claim that had to survive a motion to dismiss.); *Doe v. Trs. Of Bos.
Coll.*, 892 F.3d 67, 88 (1st Cir. 2018) (reversing dismissal of Plaintiff's "basic fairness"
claim, stating that while it was analyzing the claim in the context of the implied covenant
of good and fair dealings, even if the student did not have a contractually based claim,
when the school decided to hold a hearing, it had a duty to conduct it with basic fairness);
*Doe v. Claremont McKenna Coll.*, 25 Cap.App.5[th] 1055, 1070-73 (Cal.App. 2018) (Doe
sought to overturn his suspension after having been found responsible for nonconsensual
sex with a student at neighboring college.  The district court dismissed his claims.  In
reversing, the Court of Appeals panel stated "We conclude that these cases distill to a set
of core principles applicable to cases where the accused student faces a severe penalty
and the school's determination turns on the complaining witness's credibility. First, the

accused student is entitled to "a process by which the respondent may question, if even indirectly, the complainant." (Regents, supra, 5 Cal.App.5th at p. 1084.) Second, the complaining witness must be before the finder of fact either physically or through videoconference or like technology to enable the finder of fact to assess the complaining witness's credibility in responding to its own questions or those proposed by the accused student. (See Cincinnati, supra, 872 F.3d at pp. 401-402.) Doe v. Claremont McKenna Coll. (Cal. App., 2018).”); *John Doe v. University of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) (Stating that while there is no blanket rule regarding what level of process is due when a child is facing suspension from school, the minimum level of process due is generally considered to be at least having notice of the charges, an explanation of the evidence, and an opportunity for the student to present his side of the story before an unbiased decision maker.); *John Doe v. University of Michigan*, No. 17-2213 (6th Cir. Opinion filed September 7, 2018) (Today, we reiterate that holding once again: if a public university has to choose between competing narratives to resolve a case, the university must give the accused student or his agent an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-finder. Because the University of Michigan failed to comply with this rule, we reverse.”).

These cases evidence a judicial trend toward holding that when schools, both public and private, do undertake the process of conducting a hearing to determine if a student is responsible for sexual assault, the school does have a duty and obligation to conduct that proceeding in a manner that provides the accused with basic fairness. This trend, which is consistent with recent guidance from the federal government regarding the level of due process that must be provided to both the accuser and the accused,

support the conclusion that Defendant, at the very least, owed Plaintiff the duty to conduct the proceedings against him with a minimal level of basic fairness.  Accepting the allegations in Plaintiff's complaint as true, Plaintiff has pleaded a plausible claim that must survive this motion to dismiss.

## IV.   PLAINTIFF'S RACIAL DISCRIMINATION CLAIMS SHOULD NOT BE DISMISSED

Title VI of the Civil Rights Act of 1964 provides in part that "[n]o person . . . shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or subject to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The Supreme Court has held that a private cause of action exists for intentional discrimination based on race, color, or national origin in covered programs and activities. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). An action must allege that there was intentional discrimination on the basis of race or national origin and that the entity engaging in the discrimination. Id.

Minnesota Statutes Section 363A.13, subdivision 1, provides, in pertinent part: It is an unfair discriminatory practice to discriminate in any manner in the full utilization of or benefit from any educational institution, or the services rendered thereby to any person because of race, color, creed, religion, national origin, sex, age, marital status, status with regard to public assistance, sexual orientation, or disability, or to fail to ensure physical and program access for disabled persons. Minn. Stat. § 363A.13, subd. 1 (2010).

These statutes "both prohibit racial discrimination by educational institutions." *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 617-18 (8th Cir. 1995). Here, while it not 100% clear, Plaintiff believes that the alleged male perpetrator in Paragraph 14 of his

Complaint was a white male student.  (Complaint ¶ 14).  The materials linked in that Paragraph lead to an article and blog in which the complaining witness makes allegations against the while male student that have a great deal of similarity to the allegations made against the Plaintiff in this case.  Despite these similarities, the alleged male perpetrator in the 2015 case was not found responsible, while Plaintiff was.

This disparate treatment between Doe, a student of South Asian origin, and white students is sufficient to state a claim under Title VI, and hence the MHRA. See, e.g., *Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009) (noting a plaintiff establishes a prima facie case of discrimination by showing others were "involved in or accused of the same or similar conduct and [we]re disciplined in different ways") (citations omitted). Plaintiff's burden at this point is not to provide definitive proof of the validity of his claim.  See *Doe v. Columbia Univ.*, 831 F.3d 46, 54-55 (2d Cir. 2016) (noting at early stage of Title VII case, plaintiff must only allege "facts supporting a minimal plausible inference of discriminatory intent").  Contrary to Defendant's position, Plaintiff has identified a similar case in which a white male student had a different outcome.  Having pleaded this, Plaintiff has done enough to survive a motion to dismiss and should be allowed an opportunity to develop his claim through discovery.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that Defendant's motion to dismiss be denied.  In each case, Plaintiff has pleaded the requisite facts to support a claim of discrimination or bias against him which impacted the outcome of the proceedings.  Plaintiff also has shown overwhelming evidence that the process used to find him guilty of rape was riddled with problems and utterly lacking in anything

consistent with due process or fundamental fairness. The erroneous judgment by Defendant against Plaintiff causes severe harm to his reputation and future. As such, the case should proceed to a decision on its merits. The basic procedural protections of due process have been imperiled by Defendant's attempts to combat campus sexual assault. Plaintiff is not alleging that Defendant failed to enact the required rules and procedures. He is alleging that the rules and procedures that Defendant enacted and applied to him were discriminatory and illegal.

Dated: December 12, 2018                    **MCGRAW LAW FIRM, P.A.**

                                            **/s/Beau D. McGraw**

                                            _____
                                            Beau D. McGraw, I.D. No.: 31190X
                                            Attorney for Plaintiff
                                            10390 39th Street North, Suite 3
                                            Lake Elmo, MN 55042
                                            Telephone: (651) 209-3200
                                            beau@mcgrawlawfirm.com