UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Civil No. 18-cv-02689 (MJD/SER)

John Doe,

          Plaintiff,

v.

St. Olaf College,

          Defendant.

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS**

## INTRODUCTION

Plaintiff's response memorandum provides no legal or factual basis for the Court to second-guess or otherwise disregard the disciplinary decisions of St. Olaf College ("the College"). To be sure, there is no legal authority to support Plaintiff's Title IX declaratory judgment claim. And Plaintiff's Complaint does not articulate any facts to connect the outcome of his disciplinary process to race or gender. But Plaintiff's claims also fail for a more fundamental reason: Plaintiff admitted that he engaged in sexual conduct with Jane Roe after she fell asleep, and that he took advantage of her. Neither Title IX nor the common law provides safe harbor for such misconduct, and the Court should therefore dismiss Plaintiff's Complaint.

## ARGUMENT

**I. PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF IS NOT LEGALLY COGNIZABLE.**

Count I of Plaintiff's Complaint alleges that the College's disciplinary process violated Title IX regulations. (Doc. 1 at ¶¶ 124-27.) But almost twenty years ago the

Supreme Court spurned the notion that the implied private right of action under Title IX allows recovery for violation of Title IX's administrative requirements. *Gebser v. Lago Vista Independent School District*, 524 U.S. 272, 292 (1998). The Court further explained that a "failure to promulgate a grievance procedure does not constitute discrimination under Title IX," but that "the Department of Education could enforce the requirement administratively." *Id*.

In reliance on *Gebser*, numerous district courts have since held or otherwise observed that there is no private right of action for alleged violations of Title IX's administrative requirements. *E.g. Chambers v. Tenn. Bd. of Regents*, 2017 U.S. Dist. LEXIS 118713, at *10 (W.D. Tenn. July 28, 2017). And on at least four separate occasions the District of Minnesota has rejected declaratory judgment claims based on Title IX administrative requirements. *In re Doe by & through Doe v. Saint Paul Conservatory for Performing Arts*, 2018 WL 2431849, at *3 (D. Minn. May 30, 2018) (most recent). In contrast, Plaintiff has not cited a single case specifically identifying a private right of action to enforce Title IX regulations. Plaintiff's claim for declaratory relief is not cognizable and should be dismissed.

## II. PLAINTIFF'S COMPLAINT FAILS TO STATE AN ERRONEOUS-OUTCOME CLAIM UNDER TITLE IX.

Plaintiff's memorandum recites a list of supposed deficiencies that suggest an erroneous outcome. But especially considering Plaintiff's admission of guilt, none of these do the trick. For example, Plaintiff's claim that Jane Roe failed to object to sexual conduct, even if it were true, fails to acknowledge the applicable standard under the College's

2

policy. And Plaintiff's claim that he did not have access to an attorney is just plain wrong. In any event, Plaintiff's failure to acknowledge his admitted misconduct does not lessen the severity of the wrongdoing. Given Plaintiff's admissions, the outcome of his disciplinary process cannot be erroneous, and the Court may dismiss the Title IX claim on that basis alone.

Even if Plaintiff could reasonably cast doubt on the outcome of his disciplinary process, to allege a viable Title IX claim, he must also allege circumstances suggesting that gender bias motivated the College's disciplinary proceeding. *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 990 (D. Minn. March 1, 2007). In response to the motion to dismiss, Plaintiff offers only two speculative reasons to support his argument that the College's conduct was motivated by gender bias. Neither holds water.

First, referring to a separate 2015 incident that received media attention, Plaintiff claims that the College is motivated to avoid the negative publicity associated with not finding a male responsible for violating the Policy. But Plaintiff does not explain how or why any such pressure could impact the neutral, third-party investigator who makes all factual findings. More importantly, there are no factual allegations explaining how such pressure actually existed at the time of Plaintiff's own disciplinary matter. In *Doe v. Baum*, cited by Plaintiff, the Sixth Circuit specifically noted that dismissal was inappropriate because negative media reports continued for years and through the consideration of the plaintiff's own disciplinary decision. 903 F.3f 575, 586 (6th Cir. 2018). No such overlap is present here.

3

Second, Plaintiff claims that the fact Jane Roe's testimony was credited over his version of events is evidence of gender discrimination. But Plaintiff has not cited any case where this sole factor was enough to defeat a motion to dismiss. *Cf. Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 779 (S.D. Ohio 2015) (noting that plaintiff asserted no facts to suggest that the Title IX investigator would have treated a female accused of sexual assault any differently in her investigation of that the University would have acted differently in a disciplinary procedure against a female accused of sexual assault.) Indeed, Plaintiff's own cases do not support this proposition at all. In *Doe v. Salisbury*, the court denied a motion to dismiss because Plaintiff claimed the school's internal communications would evidence an explicit intent to favor women over men in disciplinary matters. 123 F. Supp. 3d 748, 768 (D. Md. 2015). Plaintiff's Complaint contains no such similar allegations and is bereft of facts explaining how the disciplinary decision was actually motivated by sex discrimination. Dismissal is therefore appropriate.

### III. PLAINTIFF'S NEGLIGENCE CLAIM FAILS BECAUSE HE HAS NOT ALLEGED THE ACTUAL BREACH OF A COMMON-LAW DUTY.

Plaintiff apparently now acknowledges that under Minnesota law the College's Policy cannot impose a duty for purposes of a negligence claim. *See D&A Dev. Co. v. Butler*, 357 N.W.2d 156, 158 (Minn. Ct. App. 1984). Instead, in a desperate need to manufacture a duty of care to support his negligence claim, Plaintiff argues that *Abbariao v. Hamline Univ. School of Law* and *Rollins v. Cardinal Stritch Univ*. create a common-law duty not to expel students in an arbitrary manner. 258 N.W. 2d at 112-13; 626 N.W.2d at 470. But *Rollins* clarified the scope of that duty was relatively narrow – notice of and

the reasons for any disciplinary process, and an opportunity to for a student to explain his conduct. 626 N.W.2d at 470. And Plaintiff does not allege any breach of these limited requirements. Indeed, the Complaint is clear that Plaintiff was afforded due process well beyond that contemplated by *Rollins*:

| **Plaintiff contends St. Olaf should have done the following to meet its duty of care:** | **Factual allegations in the Complaint that prove St. Olaf complied with such duty:** |
|---|---|
| Provide notice of the procedure, including where complaints may be filed. (Plf's Memo at 20.) | Doe received a letter notifying him that a complaint had been made against him, along with a description of what the process would be after the complaint was made. (*See* Compl. ¶¶ 96, 103, 105; ECF No. 1-3.) |
| Provide "adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence." (Plf's Memo at 20.) | An investigation was conducted by a neutral third-party, which consisted of interviews with eight (8) St. Olaf students, including Doe and Roe. (Compl. ¶ 99.) Doe asked that another student, JL, be interviewed, and the investigator attempted to interview him, but JL did not come to his scheduled interview. (*Id.* ¶ 101–102.) |
| Designation of reasonably prompt timeframes for the major stages of the complaint process. (Plf's Memo at 20.) | The initial letter sent to Doe provided him with timeframes for the grievance process. (*See* ECF No. 1-3.) When Doe requested additional time to respond to the Investigation Report, he was given it. (*See* ECF No. 1-4 at 3.) |
| Provide notice to the parties of the outcome of the complaint. (Plf's Memo at 20.) | Doe was provided with the Investigation Decision Letter and the Adjudication Panel's Determination of Appeal and Sanctions. (*See* ECF Nos. 1-7 and 1-8.) |
| Provide Doe with "similar and timely access to any information that will be used at the hearing." (Plf's Memo at 21.) | Doe states that he reviewed the Investigation Report where he reviewed interviews with the other students that had been conducted, and was allowed to review text messages and video footage had been obtained. (Compl. ¶ 108.) |
| Provide an appeal process. (Plf's Memo at 21.) | Doe appealed the Investigator's Decision Letter, which was reviewed by the adjudication panel and denied. (*See* ECF No. 1-8.) |

5

| | |
|---|---|
| Provide the opportunity to select an advisor of choice, including the right to have that advisor attend any meeting or proceeding at which the party's presence is contemplated. (Plf's Memo at 22.) | Doe was allowed to choose an advisor and was assisted by counsel. (*See* ECF No. 1-4 at 2-3.) When Doe complained that the cost of an attorney was too high, he was told his father could act as his advisor. (*Id.* at 1.) |

Moreover, Plaintiff's hyperbolic claims that he was subject to a "sham sexual assault trial" and that "nothing even resembling due process was provided" ring particularly hollow in light of his admitted misconduct. The fact is that the College provided due process beyond that intended by *Rollins* and reached a result consistent with Plaintiff's own admissions. Whatever duty Plaintiff might claim applies, it was not breached under these circumstances.

## IV. DOE'S "NOT 100% CLEAR" RACE DISCRIMINATION ALLEGATIONS CANNOT SURVIVE RULE 12(b)(6).

Doe argues he has adequately pleaded his race discrimination claims. He directs the Court to his Complaint, which vaguely describes one incident where another student, who Doe "believes" is white, was not disciplined after he also was accused of sexual assault.[1]

This is a perfect example of the "guess now, discover later" pleading that *Iqbal* and *Twombly* prohibit. Nothing in Doe's Complaint, or in the articles he incorporates by reference, identify the race of the comparator student. (*See generally* Exs. C, D.) The Star Tribune article describes the alleged perpetrator as a "male," but goes on to state that the female student is "careful not to identify the accused student by name." (*See* Ex. C.) The

---

[1] Specifically, Plaintiff directs the Court to paragraph 14 of his Complaint in which he incorporates an article from the Star Tribune and a blog post. For the Court's convenience, these documents are attached hereto as Exhibits C and D.

6

blog post identifies a "fellow student," but again does not identify who he is—let alone his race. (*See* Ex. D.) These allegations are insufficient to overcome the pleading requirements set forth in *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1015 (8th Cir. 2013) (plaintiff's conclusory allegations—even where he identified an alleged comparator—were insufficient to sustain a Title VII claim).

Further, the cases relied on by Plaintiff are easily distinguishable. In *Wibley v. Cashion*, 588 F.3d 959, 961 (8th Cir. 2009), the court concluded that the plaintiff, an African-American female correctional officer, had established a prima facie case of discrimination where she alleged that she was terminated after spraying an inmate with pepper spray while the white male correctional officer who also pepper-sprayed that inmate was not. As noted above, Doe only speculates that there was a white student who was treated differently than him. Further, in *Wibley* the two comparators shared the exact same fact pattern. That is, they both sprayed the same inmate with pepper spray. (*Id.*) Here, Doe's Complaint contains no details involving the 2015 incident that would suggest the two males are similarly situated. If Doe had alleged that the comparator student was not disciplined, *even though* he admitted to the Investigator and police that he engaged in sexual contact while the victim was sleeping (like Doe has done), then he may have a claim. But he has not, and cannot, make this allegation.

Finally, *Doe v. Columbia University*, 831 F. 3d 46, 54–55 (2d Cir. 2016) is inapposite. There, the plaintiff did not allege he was discriminated based on his race. While the *Columbia University* court discusses Title VII, it does so in the context of explaining how plaintiff's Title IX complaint should be analyzed. What is more, the *Columbia*

7

*University* court states that a plaintiff must allege "facts supporting a minimal plausible inference of discriminatory intent." *Id.* Doe recognizes this fact as well. (*See* Plf.'s Memo at 26) (stating one "must allege that there was intentional discrimination on the basis of race or national origin.") But Doe fails to identify any part of the grievance process in which he was treated differently because of his race. Again, he has failed to identify any race-based comments made to him during the grievance process, or any allegations that race-based animus fueled the adjudication panel and investigator's determination.

Simply put, Doe does not have race-discrimination claims under either Title VII or the MHRA. These claims, like the others, should be dismissed.

## CONCLUSION

For these reasons, and those addressed in its opening memorandum, the College respectfully requests that the Court dismiss Plaintiff's Complaint its entirety.

**BASSFORD REMELE**
*A Professional Association*

Dated: December 20, 2018       *s/ Jonathan P. Norrie*
Jonathan P. Norrie (MN #347309)
Brittany Bachman Skemp (MN #395227)
100 South 5th Street, Suite 1500
Minneapolis, Minnesota 55402-1254
Telephone: (612) 333-3000
Facsimile: (612) 333-8829
jnorrie@bassford.com
bskemp@bassford.com

*Attorneys for St. Olaf College*